IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JANICE DAUGHARTY and STEWARD DAUGHARTY, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORTATION, AS RECEIVER FOR PARK AVENUE BANK, <br><br> Defendant. | Civil Action No. 7:12-CV-49 (HL) |

**ORDER**

Before the Court is the Motion for Summary Judgment (Doc. 22) filed by Defendant Federal Deposit Insurance Corporation ("FDIC"), as receiver for Park Avenue Bank. For the reasons stated below, Defendant's motion is denied.

**I.    Factual Background**

On the afternoon of January 25, 2011, Plaintiffs Janice Daugharty ("Mrs. Daugharty") and Seward Daugharty ("Mr. Daugharty") arrived at the Park Avenue Bank ("Bank") in Valdosta, Georgia to close an account at the Bank. Mrs. Daugharty had never previously visited this particular location of the Bank. While Mr. Daugharty remained in their car, Mrs. Daugharty entered the Bank via a walkway that leads from the parking lot to the Bank's doors. (Plaintiffs' Statement

of Material Facts, Doc. 31, ¶1, 10, 13; Deposition of Janice Daugharty, Doc. 21, pp. 63-64, 80, 82-83).

After finishing her business in the Bank, Mrs. Daugharty exited the building and took the same path back towards the parking lot. She looked down at the ground in descending the three steps immediately outside the Bank's doors, but once she reached the walkway, she began looking up and down as she walked. Approximately halfway between the Bank's doors and the parking lot, Mrs. Daugharty tripped over a protruding lip of concrete in the walkway, fell to the ground, and injured herself. (Doc. 21, pp. 81-82, 87-89, 92-93). The unevenness was caused by one concrete square of the walkway being slightly higher than the adjacent square. (Defendant's Ex. 1-9 to Doc. 21). The lip was two inches tall in the spot where Mrs. Daugharty tripped. (Stipulated Testimony of Larry Hale, Doc. 30, ¶7, 12).

Mrs. Daugharty did not notice the elevated lip of concrete before she tripped. (Doc. 21, pp. 87-89). A person coming from the parking lot and into the Bank would have stepped from the elevated square onto the lower square, in effect avoiding the concrete lip. (Defendant's Ex. 1-9 to Doc. 21). She was walking normally, not running, when she tripped, and she was not under the influence of medications. Although Mrs. Daugharty had traversed the same path when she went into the Bank, the record is not clear whether she had walked

over the exact spot of the lip where she later tripped. (Doc. 21, pp. 81-82, 88-89, 92-93). Rain had begun falling when Mrs. Daugharty entered the Bank, and it had increased by the time she left. The sky was slightly overcast at that time, but Mrs. Daugharty denies that the rain or lighting contributed to the accident. (Doc. 21, pp. 87, 91-92). The two adjacent concrete squares in the walkway where Mrs. Daugharty fell are the same color. The elevated concrete lip had not been painted to draw pedestrians' attention to the uneven walkway, and no warning signs had been posted along the path. (Defendant's Ex. 1-9 to Doc. 21; Report of Dr. Stephen Rosen, Ex. A to Deposition of Stephen Rosen, Doc. 20, p. 4).

Larry Hale, the manager of the Bank's physical facilities, had been aware of several uneven places in the walkway well before Mrs. Daugharty's accident. Hale had worked at the Bank for approximately eleven years, but he had never previously known of anyone tripping over the walkway. Indeed, there is no evidence in the record of prior trip and falls on the Bank's walkways. So far as Hale knew, the Bank had never sought to correct the uneven concrete before Mrs. Daugharty's fall. Within a couple of weeks after her accident, Hale arranged for a construction crew to grind down the uneven concrete in the walkway where she fell. (Hale, Doc. 30, ¶1, 6, 8, 10, 11).

Plaintiffs filed suit against FDIC in the Superior Court of Lowndes County, Georgia, and the Defendant removed the action to this Court on the basis of

diversity with Plaintiffs. (Notice of Removal, Doc. 1). Mrs. Daugharty seeks damages in a general premises liability claim brought under O.C.G.A. § 51-3-1, and Mr. Daugharty has filed a loss of consortium claim predicated on his wife's negligence claim. (First Amended Complaint, Ex. D to Doc. 1).

## II.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   Legal Analysis

The Plaintiffs' claims of premises liability and loss of consortium must be reviewed under Georgia law because the claims are based on rights afforded by state law. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); Lopez v. Target Corp., 676 F.3d 1230, 1235-36 (11th Cir. 2012).

### A.     Plaintiff Janice Daugharty's Premises Liability Claim

In Georgia, property owners are required to use ordinary care to keep their property safe for invitees. O.C.G.A. § 51-3-1. A plaintiff bringing a premises liability claim must meet a two-part test, although the burden of production shifts as the test is applied. The plaintiff must show that "(1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." American Multi-Cinema, Inc. v. Brown, 285 Ga. 442, 444, 679 S.E.2d 25 (2009) (citing Alterman Foods, Inc. v. Ligon, 246 Ga. 620, 272 S.E.2d 327 (1980)).

The burden is first placed on the plaintiff to provide evidence that the defendant had actual or constructive knowledge of the hazard that caused the accident. If the plaintiff is able to do so, the burden shifts to the defendant to produce evidence that the plaintiff's injury was the result of the plaintiff's intentional disregard of a known risk or failure to exercise ordinary care for her safety. Id. at 444-45, 679 S.E.2d 25. With regard to the second part of the test, the court must "determine whether the record shows plainly, palpably, and without dispute that plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety." LeCroy v. Bragg, 319 Ga.

App. 884, 885, 739 S.E.2d 1 (2013) (quoting McLemore v. Genuine Parts Co., 313 Ga. App. 641, 643, 722 S.E.2d 366 (2012)).

Georgia law discourages courts from deciding "the 'routine' issues of premises liability" through summary judgment. American Multi-Cinema, 285 Ga. at 445, 679 S.E.2d 25. These routine issues include the relative negligence of the defendant and plaintiff and whether the plaintiff lacked ordinary care for her safety. Id. More concretely stated, "this means that issues such as…what retailers should know about the property's condition…, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking…, in general, must be answered by juries as a matter of fact rather than by judges as a matter of law." Id.

### 1. Whether Park Avenue Bank had actual or constructive knowledge of the hazard

Plaintiffs must initially show that the Bank had actual or constructive knowledge of the hazard posed by the uneven walkway before the accident. As Plaintiffs are quick to point out in their responsive brief, FDIC has stipulated that Larry Hale, who managed the Bank's facilities at the time of Mrs. Daugharty's fall, had known for some time about raised areas in the concrete walkway. (Hale, Doc. 30, ¶9-11). In FDIC's motion for summary judgment and supporting brief, FDIC has failed to argue whether it had prior knowledge the raised area of concrete constituted a hazard. (*See* Docs. 22, 22-1). The only reference to this

first element of a premises liability claim is the following phrase from the opening paragraph in FDIC's reply brief to Plaintiffs' response: "they [Plaintiffs] have failed to come forth with specific evidence…that Park Avenue Bank had knowledge that the uneven concrete posed a hazard, for there had been no complaints concerning the sidewalk prior to this incident." (Doc. 32, p. 1).

But even if the Bank did not have actual knowledge the uneven walkway posed a hazard to customers, it might have had constructive knowledge of that fact. "[I]n the absence of evidence showing actual knowledge on the part of the owner, an invitee may still establish the first element of her trip and fall claim through proof of the owner's *constructive knowledge* of the hazard." Landrum v. Enmark Stations, Inc., 310 Ga. App. 161, 162-63, 712 S.E.2d 585 (2011) (reversing summary judgment because the defendant gas station might have had constructive knowledge of the hazardous nature of a crack in the parking lot even though there was no evidence of prior falls) (internal citations omitted). Constructive knowledge may be inferred if "there is evidence that the owner lacked a reasonable inspection procedure." Id. at 163, 712 S.E.2d 585 (quoting Shepard v. Winn Dixie Stores, 241 Ga. App. 746, 748(1), 527 S.E.2d 36 (1999)). To prevail on summary judgment on the basis of a defendant's lack of knowledge, "the burden is upon the [defendant] to demonstrate not only that it had a reasonable inspection program in place, but that such program was

actually carried out at the time of the incident." Id. (internal quotation and citation omitted).

The Court finds the question of whether the Bank had knowledge that the uneven concrete was a hazard to be a material issue of fact. A jury might reasonably decide as a factual matter that an uneven walkway is an obvious tripping hazard regardless of whether prior falls had occurred, so that once the Bank knew the walkway was uneven, it had constructive knowledge the walkway was hazardous. Alternatively, a jury might determine that once the Bank knew about the elevations in the walkway, then investigating and regularly inspecting the walkway would have revealed whether the unevenness posed a tripping hazard. *See* id. (pointing to a "property owner's duty to use ordinary care toward making its premises safe for its customers"); *accord* Wood v. Winn-Dixie Stores, Inc., 244 Ga. App. 187, 188, 534 S.E.2d 556 (2000) (noting that "constructive knowledge can be demonstrated by failure to institute a reasonable inspection process to discover defects"). There is no evidence before the Court indicating whether the Bank did or did not perform such inspections.

FDIC has stipulated the Bank's physical facilities manager knew about the uneven walkway before the accident. In its motion for summary judgment, FDIC might have argued that the Bank knew about the raised condition of the walkway, but that it did not know the walkway was hazardous because no one had

previously fallen or been injured on the walkway. But FDIC did not make this argument until it replied to Plaintiffs' response, and then only in passing. Plaintiffs have had no opportunity to respond to this argument. Therefore, given Hale's knowledge of the uneven walkway and FDIC's failure to argue this first issue, the Court finds that a material issue of fact exists concerning the Bank's knowledge of the hazardous condition causing Mrs. Daugharty to trip and fall.

### 2. Whether Plaintiff Janice Daugharty intentionally disregarded the risk of tripping or failed to exercise ordinary care

Because Plaintiffs have provided sufficient evidence to create a material question of fact concerning the Bank's knowledge of the hazardous walkway, the burden now shifts to FDIC to show Mrs. Daugharty intentionally disregarded the risk of tripping or failed to exercise ordinary care for her safety.

A property owner becomes liable for an invitee's injuries based on the owner's "superior knowledge of the existence of a condition that could subject the invitee to an unreasonable risk of injury." Nemeth v. RREEF America, L.L.C., 283 Ga. App. 795, 797, 643 S.E.2d 283 (2007) (quoting Bonner v. Southern Restaurant Group, 271 Ga. App. 497, 499, 610 S.E.2d 129 (2005) (internal quotation omitted)). A plaintiff who intentionally disregards a known hazard or unreasonably fails to exercise ordinary care for her safety in avoiding an obvious hazard cannot recover from a property owner. American Multi-Cinema, 285 Ga. at 444, 679 S.E.2d 25. If the defect in the property is a static condition, then the

invitee is presumed to have knowledge of the hazard "when that person has successfully negotiated the alleged dangerous condition on a previous occasion." Bonner, 271 Ga. App. at 500, 610 S.E.2d 129. "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." Thomas v. Executive Committee of the Baptist Convention, etc., 262 Ga. App. 315, 319(c), 585 S.E.2d 217 (2003). "Small cracks, holes, and uneven spots in pavement are considered static defects." Muskett v. Sketchley Cleaners, Inc., 297 Ga. App. 561, 564, 677 S.E.2d 731 (2009) (citing Thomas, 262 Ga. App. at 317, 585 S.E.2d 217).

Knowledge of the static defect will only be presumed if the plaintiff has previously walked over the defect, for "[i]t is a plaintiff's knowledge of the *specific* hazard which precipitates the slip and fall which is determinative, not merely her knowledge of generally prevailing hazardous conditions." Bullard v. Marriott Intern., Inc., 293 Ga. App. 679, 681-82, 667 S.E.2d 909 (2008) (quoting Jackson v. Waffle House, 245 Ga. App. 371, 374(2), 537 S.E.2d 188 (2000)). In Christensen v. Overseas Partners Capital, Inc., while descending a handicap ramp the plaintiff tripped in a gap where the bottom of the ramp extended approximately two inches below the level of the parking lot. 249 Ga. App. 827, 827-28, 549 S.E.2d 784 (2001). The plaintiff did not have knowledge of the defect as a matter of law because, although she had walked over the gap in

ascending the ramp, she would not have necessarily noticed the gap. Id. at 829, 549 S.E.2d 784; *see also* Bullard, 293 Ga. App. at 682, 667 S.E.2d 909 (holding, in a case where the plaintiff tripped over a raised brick, that even if the plaintiff had walked on the path before and knew of raised bricks in other locations, there was no evidence the brick was elevated when the plaintiff had previously walked in that area); *but contrast with* Muskett, 297 Ga. App. at 564, 677 S.E.2d 731 (imputing knowledge of the pothole in the cleaner's parking lot to the plaintiff when he had been to the store on fifty-three prior occasions).

But even if an invitee has previously traversed the static defect, a presumption of knowledge is valid only if the defect is "readily discernible to a person exercising reasonable care for his own safety." Perkins v. Val D'Aosta Co., 305 Ga. App. 126, 128-29, 699 S.E.2d 380 (2010) (quoting Rutherford v. Revco Discount Drug Centers, 301 Ga. App. 702, 704, 689 S.E.2d 59 (2009) (internal citation and quotation removed)). In Perkins, the plaintiff tripped and fell at the bottom of some stairs he had climbed two or three times before. The plaintiff alleged the step leading from the stairs to the parking lot was hazardous because it was taller than average, the lighting was poor in the stairwell, there was no warning sign, and there was no handrail for the bottom step. The appellate court accordingly held the hazard was not readily discernible and summary judgment was improper. Id. at 127-30, 699 S.E.2d 380; *see also*

Bullard, 293 Ga. App. at 682, 667 S.E.2d 909 (holding a question a fact remained over whether the plaintiff should have seen the hazard since she denied seeing it and an expert witness testified it was not conspicuous) *and* Landrum, 310 Ga. App. at 165, 712 S.E.2d 585 (concluding the plaintiff's knowledge of the crack in the parking lot was a question of fact since she testified the crack was the same color and shade as the surrounding pavement).

Applying this law to the case at hand, the Court finds that remaining questions of fact preclude summary judgment for Defendant. Mrs. Daugharty testified at her deposition that she had never visited the Bank before the day of her accident. Furthermore, she denied having noticed the elevated lip of the walkway before she allegedly tripped over it and fell. (Doc. 21, pp. 82, 87-89). The Court thus finds it cannot determine as a matter of law that Mrs. Daugharty intentionally disregarded the hazard causing her accident.

But a question of fact also remains as to whether Mrs. Daugharty failed to act reasonably and exercise ordinary care for her safety. Defendant contends the uneven walkway was a static defect, readily discernible to a pedestrian, and knowledge of the defect must be imputed to Mrs. Daugharty since she had walked over the area on her way into the Bank. Applying the definition of a static defect from Thomas v. Executive Committee of the Baptist Convention, the Court finds the elevated lip of concrete in the Bank's walkway to be a static defect.

However, the Court must deny summary judgment, for it cannot rule as a matter of law that Mrs. Daugharty failed to exercise ordinary care for her safety.

First, whether Mrs. Daugharty walked over the uneven walkway before the accident in a manner that should have given her notice of the defect remains a question of fact. She denies visiting the Bank before the day the accident occurred. (Doc. 21, p. 80). More significantly, while she had traversed the uneven walkway on her way into the Bank, she had stepped from the elevated square of concrete down to the lower square, and thus a reasonable jury might decide she would not have been exposed to the hazard of tripping on the elevated lip. (Defendant's Ex. 1-9 to Doc. 21). And while she used the same walkway going in as she did coming out, the record is not clear whether she passed over the exact spot where she later tripped. (Doc. 21, pp. 81-82). The facts in this case are very similar to what occurred in <u>Christensen</u>, where the Georgia Court of Appeals declined to impute knowledge of the static defect to the plaintiff because when she walked up the ramp she could not have tripped in the gap at the bottom of the ramp as she did when she was descending. Thus, the Court cannot find as a matter of law that Mrs. Daugharty had knowledge of the raised lip of concrete before her accident.

Second, even if Mrs. Daugharty had been more familiar with the walkway, a question of fact remains as to whether the uneven lip was "readily discernible"

to an invitee taking ordinary care for her safety. The Court has reviewed video stills of the walkway taken on the day of her accident, and Mrs. Daugharty has testified these stills "fairly and accurately" reflect how the walkway appeared that day. (Doc. 21, pp. 66-69). Both the elevated and lower concrete squares in the walkway forming the lip where Mrs. Daugharty tripped appear to be the same color and shading. The left side of the lip is hardly noticeable, barely distinguishable from the dividing cracks in the surrounding concrete squares, although the lip appears more pronounced on the right side. The video still does not show any warning signs to alert pedestrians to the uneven lip, and neither the lip's face nor the edges of the concrete squares have caution paint. (Defendant's Ex. 1-6, Doc. 21). When Plaintiffs' expert Dr. Stephen Rosen visited the Bank on October 3, 2011, he did not see any warning signs or caution paint either. (Doc. 20, p. 42). The Court finds the facts here to be similar to those in <u>Bullard</u>, <u>Landrum</u>, and <u>Perkins</u> where the defects were not readily discernible, and so it cannot rule as a matter of law that the uneven walkway would have been readily discernible to an invitee in Mrs. Daugharty's shoes.

Whether Mrs. Daugharty exercised ordinary care for her safety is a question of fact that must be decided by a jury. Mrs. Daugharty testified she was paying attention as she came out of the Bank, was not distracted as she started down the walkway, and was not under the influence of any medications. She

denies being a careless or clumsy pedestrian. (Doc. 21, pp. 87-89). She said she was walking "like you would….I was looking where I was going. But even so, I'm looking up and down alternately." (Doc. 21, pp. 92-93). Based on an analysis of the evidence, Plaintiffs' expert found nothing to criticize in the manner of Mrs. Daugharty's walking and testified the uneven lip in the walkway would not have been easily seen by a pedestrian. (Doc. 20, pp. 21-23, 28, 34, 55-58; Ex. A to Doc. 20). Ordinary care did not require Mrs. Daugharty to inspect the Bank's walkway before each footfall. *See* Robison v. Kroger Co., 268 Ga. 735, 743(1), 493 S.E.2d 403 (1997). "The fact that [Mrs. Daugharty] agreed at her deposition she could have seen the [elevated lip], had she looked straight at it, no longer is a viable basis for sustaining summary judgment." Jackson, 245 Ga. App. at 375, 537 S.E.2d 188. The Court thus finds that whether Mrs. Daugharty took ordinary care for her safety is a question of fact that must be determined by the jury.

### B.   Plaintiff Seward Daugharty's Loss of Consortium Claim

A spouse's right to bring a loss of consortium claim in Georgia derives from the legal rights held by the other spouse, so that if the underlying claim fails then the loss of consortium claim is lost as well. Douberly v. Obefenokee Rural Electric Membership Corp., 146 Ga. App. 568, 569, 246 S.E.2d 708 (1978) (quoting Hightower v. Landrum, 109 Ga. App. 510, 514, 136 S.E.2d 425 (1964)); Behforouz v. Vakil, 281 Ga. App. 603, 604, 636 S.E.2d 674 (2006) (citing White

v. Hubbard, 203 Ga. App. 255, 257, 416 S.E.2d 568 (1992)). Defendant has moved for summary judgment on Plaintiff Seward Daugharty's loss of consortium claim solely on the grounds that Mrs. Daugharty's premises liability claim must be dismissed under summary judgment. Therefore, because the Court has denied Defendant's motion for summary judgment on the premises liability claim, it denies Defendant's motion with regards to the loss of consortium claim as well.

## IV. Conclusion

Based on the foregoing, the Court denies Defendant's Motion for Summary Judgment (Doc. 22). The Plaintiffs may move forward with their claims, and this case will be set for trial.

**SO ORDERED**, this the 17th day of October, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr