**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **JANICE DAUGHARTY and SEWARD DAUGHARTY,**<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR PARK AVENUE BANK,**<br><br>Defendant. | Civil Action No. 7:12-CV-49 (HL) |

**ORDER**

Before the Court is Defendant's Motion to Exclude the Testimony and Expert Report of Stephen Rosen, Ph.D. (Doc. 18). For the reasons stated below, the motion is granted in part and denied in part.

**I.   Background**

This case arises from a trip-and-fall accident suffered by Plaintiff Janice Daugharty ("Mrs. Daugharty") at the Park Avenue Bank ("the Bank") on January 25, 2011. As she was walking back to her car after concluding her business with the Bank, Mrs. Daugharty tripped and fell on an uneven portion of the concrete walkway that extends from the Bank's building to the parking lot. (Complaint, Ex. A to Doc. 1). Plaintiffs originally filed this case in state court, but Defendant removed the case to this Court on the basis of diversity of jurisdiction. (Notice of

Removal, Doc. 1). Plaintiffs have hired Dr. Stephen Rosen ("Dr. Rosen") to serve as an expert witness on the human factors involved in trip-and-fall accidents. (Deposition of Dr. Stephen Rosen, Doc. 20, pp. 3-5, 52).

To understand how the accident happened, Dr. Rosen visited the Bank to measure the walkway where Mrs. Daugharty tripped and fell. Because the uneven concrete walkway had been ground down since Mrs. Daugharty's accident, Dr. Rosen was not able to see the walkway in its original condition. However, he found that there was still a change in elevation of three-fourths of an inch in the walkway where the accident occurred. Dr. Rosen also later spoke with Mrs. Daugharty about the accident. (Doc. 20, pp. 19-23, 27-28).

Dr. Rosen offers four expert opinions. Without including the various subparts, the opinions are as follows: 1) the Bank maintained a substantial tripping hazard with the walkway; 2) the walkway violated various provisions of the International Building Code and the Americans with Disabilities Act ("ADA"); 3) there was no act or omission by Mrs. Daugharty that caused her fall or injuries; and 4) the injuries she suffered are of a type that would be consistent with a trip-and-fall accident. (Doc. 20, pp. 32-35, 57-58; Report of Dr. Rosen, Exhibit A to Doc. 20, pp. 2-4).

## II. Legal Analysis

In diversity cases, the Federal Rules of Evidence govern the admissibility of evidence. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). The burden is on the Plaintiffs to lay, by a preponderance of the evidence, a foundation for the admission of Dr. Rosen's expert testimony. Corvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)). Whether Dr. Rosen's opinions may be offered as expert testimony at trial is determined by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the standard articulated by the Supreme Court of the United States, this Court must act as a "gatekeeper" and test the reliability and relevancy of Dr. Rosen's opinions before determining whether they can be admitted as expert testimony. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court must undertake a "rigorous three-part inquiry" and decide whether: 1) Dr. Rosen is qualified to competently testify

concerning the matters for which he has offered an opinion; 2) his methodology is sufficiently reliable under the Daubert standard; and 3) his testimony would assist the jury, through the application of scientific, specialized, or technical expertise, to determine a fact in issue or understand the evidence. United States v. Fazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).

### A. Whether Dr. Rosen is qualified to testify about the biomechanics of the accident and possible code violations

Defendant has attacked Dr. Rosen's qualifications to competently testify concerning the biomechanics of the accident and the Bank's possible violations of the International Building Code and the ADA. The Court finds that Dr. Rosen is amply qualified to provide competent testimony concerning the type of injury Mrs. Daugharty allegedly suffered from her fall. Although Dr. Rosen does not have a degree in medicine or biomechanical engineering, he is qualified to provide opinions in certain areas of biomechanics because he has extensive education, training, and experience in those areas. Prior to completing his Ph.D. in human anatomy and physiological anthropology from the University of Kansas, he studied biomechanics as a research assistant at Columbia University's College of Physicians and Surgeons. He later studied orthopedic pathology at the Armed Forces Institute of Pathology. Dr. Rosen is a member of multiple professional engineering associations. He is also a retired professor and vice provost at the

University of Maryland, where his academic interests evidently included the biomechanics of walking and falling. (Doc. 20, pp. 35, 52, 66-68, 77-79; CV of Dr. Rosen, Ex. 1 to Doc. 23).

Because of his education and training in biomechanics, Dr. Rosen will be permitted to testify that Mrs. Daugharty's injuries are of a type that would be consistent with a trip-and-fall accident. (Doc. 20, pp. 35-36). Dr. Rosen will not be allowed to testify about the exact cause of Mrs. Daugharty's injuries because he is not a medical doctor. However, his background qualifies him to provide similar testimony to a biomechanical engineer, and biomechanical engineers have repeatedly been found qualified to provide opinions on the general types of injuries caused by the forces generated in an accident. *See, e.g.*, Jaquillard v. Home Depot U.S.A., Inc., No. CV 410-167, 2012 WL 527421, at *3 (S.D.Ga. Feb. 16, 2012); Berner v. Carnival Corp., 632 F. Supp. 2d 1208, 1212-13 (S.D.Fla. 2009); Bowers v. Norfolk S. Corp., 537 F. Supp. 2d 1343, 1377 (M.D.Ga. 2007); Smelser v. Norfolk S. Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997).

However, the Court finds that Plaintiffs have not met their burden of showing that Dr. Rosen is qualified to provide an expert opinion that hip fractures are common in individuals over fifty years old, as he proposes to do. Plaintiffs have not pointed to evidence of Dr. Rosen's education, training, or experience in medical research that would enable him to competently testify concerning such

data. Merely because Dr. Rosen has studied the effects of force from a fall on the human body does not mean he has also studied how frequently older individuals suffer hip fractures. Dr. Rosen may not testify that hip fractures are common in individuals over fifty years old.

Determining whether Dr. Rosen may testify about Mrs. Daugharty's knee abrasions and what they indicated concerning her physical health requires rather fine hair-splitting. Defendant objects to Dr. Rosen's qualifications to opine that the fact Mrs. Daugharty suffered knee abrasions from the accident indicates she was in good physical health. Because Dr. Rosen is not a medical doctor, the Court finds that he is not qualified to testify concerning Mrs. Daugharty's health or what the abrasions might have suggested about her health. However, he is qualified to render expert testimony concerning the biomechanics of her trip and fall, and so he may testify about the general type of injuries a healthy body would have suffered from the fall as opposed to an unhealthy body.

Defendant also argues that Dr. Rosen is not qualified to testify that the pre-accident condition of the Bank's walkway violated the International Building Code and the ADA. Keeping in mind that the Plaintiffs have the burden of establishing a foundation for their expert's testimony, the Court finds that Dr. Rosen is not qualified to testify as an expert regarding the International Building Code. There is no evidence that he has any education, training, or experience in mechanical

engineering or construction. As Defendant points out, Dr. Rosen has never been a building inspector or code enforcer. (Doc. 20, pp. 52-53). The record is unclear whether Dr. Rosen's past experience as an expert witness has involved testifying about building codes, but even if it did, the Court is not persuaded this experience alone would qualify him as an expert on the International Building Code. This ruling does not prevent Plaintiffs from seeking to admit evidence of violations of the International Building Code through some other means; they just may not use Dr. Rosen to do so.

Nor may Dr. Rosen offer expert testimony about possible violations of the ADA. In their response to Defendant's motion to exclude Dr. Rosen's testimony, Plaintiffs have indicated they have no intention of presenting testimony from Dr. Rosen concerning alleged violations of the ADA. (Doc. 23, p. 13, n. 5). The Court finds that Plaintiffs have conceded this point and grants Defendant's motion to exclude Dr. Rosen's testimony about ADA violations.

### B. Whether Dr. Rosen's opinions are reliable, based on sound methods, and would assist the trier of fact

Defendant's motion to exclude also attacks the methodology, reliability, and helpfulness of two of Dr. Rosen's opinions. According to Defendant, Dr. Rosen's opinion that no act or omission by Mrs. Daugharty contributed to her accident is unreliable because it conflicts with her own deposition testimony. Defendant also moves to prevent Dr. Rosen from testifying the uneven walkway

was "a substantial tripping hazard" because it is not an expert opinion and would not assist a jury. Defendant's motion to exclude these opinions must be denied.

Defendant argues Dr. Rosen's opinion that no act or omission by Mrs. Daugharty caused her accident or injuries is unreliable because it conflicts with her own testimony. The Court is not convinced by Defendant's argument and denies its motion. Contrary to Defendant's assertion, Mrs. Daugharty did not unequivocally testify she was looking down as she walked over the uneven concrete where she tripped. She said she looked down as she descended the steps outside the Bank's doors, and the steps ended several feet from where she fell. Her testimony certainly does not unequivocally indicate she looked straight down at the ground the whole time she was walking. (Deposition of Janice Daugharty, Doc. 21, pp. 88, 126-29). Whether Dr. Rosen's opinion lacks support from the factual record or conflicts with Mrs. Daugharty's testimony "is an issue that goes to the credibility and weight of his testimony, as opposed to its admissibility." Ahuja v. Cumberland Mall, LLC, 821 F. Supp. 2d 1317, 1323 (N.D.Ga. 2011) (citing Bonner v. ISP Tech., Inc., 259 F.3d 924, 929 (8th Cir. 2001)). Defendant may point out any flaws in Dr. Rosen's factual assumptions when its counsel cross-examines him at trial and let the jury decide his credibility.

The Court also denies Defendant's motion to exclude Dr. Rosen's conclusion that the uneven walkway constituted a substantial tripping hazard.

Defendant first challenges Dr. Rosen's opinion on the grounds that he employed a faulty methodology to reach his conclusion. The factors a court must use in determining the reliability and usefulness of a particular methodology include whether the theory or methodology can be or has been tested; whether the theory has been subjected to peer review and publication; the known or potential rate of error for the methodology; the existence and maintenance of controlling standards for the methodology's operation; and whether the theory or methodology has found "general acceptance" in the relevant scientific community. Daubert, 509 U.S. at 593-94.

Dr. Rosen's opinion about the tripping potential of the uneven walkway is not, contrary to Defendant's depiction, an *ipse dixit* assertion. Although Dr. Rosen did not perform any testing of the walkway, he did measure the height differential between the two concrete squares where Mrs. Daugharty tripped. (Doc. 20, pp. 19-20, 50-51). He then proceeded to analyze the measurement using his base theory that differences in elevation of more than half an inch present substantial tripping hazards. (Doc. 20, pp. 5, 19-20, 39-40). This whole process—observation, measurement, and interpretation—constituted Dr. Rosen's methodology. During his deposition, Dr. Rosen said he did not know whether his methodology had ever been tested, whether it had ever been subjected to peer review or publication, or whether it had a known rate of error.

But he had earlier told Defendant's attorney he did not understand what the attorney was referring to by the term "methodology," and his answers clearly show he assumed the questioning only referred to his measurements of the walkway's elevation. (Doc. 20, pp. 51-52). Defense counsel allowed Dr. Rosen to answer the questions based on this assumption without clarifying the confusion.

The Court finds that Dr. Rosen's methodology included more than the height measurements and that it was reliable under the Daubert factors. As Dr. Rosen detailed in his deposition, his theory that differences in elevation of more than half an inch pose a substantial tripping hazard is based on a study he performed for the mobile home industry. He has written a book on slip and fall accidents and another on the duty to warn. He has given over seven hundred depositions in accident cases and given trial testimony more than four hundred times. The tenor of Dr. Rosen's testimony suggested he employed the same method and theory here that he used for past cases. (Doc. 20, pp. 5, 40, 47-48, 70-71; Ex. 1 to Doc. 23). Plaintiffs have carried their burden to lay a foundation for the reliability of Dr. Rosen's methodology. If Defendant wished to challenge the reliability of Dr. Rosen's theory that a height difference of more than half an inch creates a substantial tripping hazard, then its attorney should have clarified its deposition questions for Dr. Rosen and inquired as to whether his publications

and past testimony as an expert witness reflected this theory. Certainly Defendant is free to cross-examine Dr. Rosen about his theory at trial.

Defendant's argument has no merit whatsoever to the extent it portrays Dr. Rosen's opinion as unreliable because he measured the walkway after the Bank had ground down the concrete following Mrs. Daugharty's accident. It was the Bank, not Plaintiffs, who altered the walkway. The opinions of Plaintiffs' expert witness will not be excluded merely because the Bank chose to grind down the walkway, however virtuous its purposes were in doing so. If Defendant wishes to challenge the factual reliability of Dr. Rosen's measurements, then at trial its counsel may certainly raise the subsequent altering of the walkway.

Defendant also argues Dr. Rosen's opinion should be excluded because it is based on nothing more than a height measurement, something a layman could have done. In support of this argument, Defendant cites <u>Evans v. Mathis Funeral Home, Inc.</u> where the exclusion of certain testimony from the plaintiff's expert witness as within the common knowledge of the jurors was affirmed. 996 F.2d 266, 268 (11th Cir. 1993). In <u>Mathis</u> the excluded testimony related to how the uneven flooring and the height of the handrail had caused the plaintiff to fall, but significantly, the effects of the lighting were found to not be of common knowledge. <u>Id.</u> Here, Dr. Rosen's testimony would not be limited to how the raised lip of the concrete could trip Mrs. Daugharty's foot, but it would also

include a complex analysis of why a pedestrian might not notice the raised lip in the first place. Dr. Rosen would be able to offer this explanation because he has studied the biomechanics of falling accidents for decades. The Court finds that Dr. Rosen's opinion that the uneven walkway at the Bank constituted a substantial tripping hazard would assist the jury as the trier of fact.

### III. Conclusion

Based on the foregoing, Defendant's Motion to Exclude (Doc. 18) is granted in part and denied in part. Dr. Rosen may not testify concerning his opinions that the condition of Park Avenue Bank's walkway violated the International Building Code or the Americans with Disabilities Act, that hip fractures commonly occur in individuals who are more than fifty years old, or that Plaintiff Janice Daugharty was in good physical health at the time of her fall. However, he may testify as an expert witness regarding his opinions that the Bank's walkway was a substantial tripping hazard, that no act or omission by Mrs. Daugharty caused her accident or injuries, and that her injuries were of a type that would be consistent with a trip and fall.

**SO ORDERED**, this the 17th day of October, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr